## Richmond.

### HAWLEY v. COMMONWEALTH.

### Absent, *Moncure,* P.

1. An indictment for felony is against four persons, M, P, C and G. The first three counts are for the murder of H. The fourth count is against M, one of them for murder, and against the other three for knowingly and willfully aiding, abetting and counselling the said M to commit the felony aforesaid. And the count in the conclusion charges that the said M, P, C and G, him, the said H, in manner and form aforesaid, feloniously. willfully and of their malice aforethought, did kill and murder, &c.   HELD :

    1. The same count may contain a charge of murder against one, and a charge of being an accessory against others.

    2. If the conclusion of the count charging them as guilty of murder is not correct, it is not essential to the indictment, and may be struck out as surplusage.

2. In this case the jury by their verdict say P is guilty of murder in the second degree as charged in the fourth count in the indictment, and fix the term of his imprisonment in the penitentiary, saying nothing as to the other counts of the indictments. This is an acquittal on the other counts; and is a sufficient finding under the fourth count.

3. The committing magistrate does not by his warrant fix the grade of the offence with which the accused is charged. His inquiry is simply as to the fact. And a prisoner cannot object that he has had no preliminary examination before a justice of the peace of the offence of which he is indicted and found guilty ; that being one grade of the offence for which he was committed.

This case was heard at Wytheville, but was decided at Richmond. It was an indictment in the county court of Roanoke county against Marcus D. L. Hawley, Peter Haw-

ley, and two others, for the killing of Zachariah Hayes. The indictment contained four counts. The fourth count, after charging Marcus D. L. Hawley with the murder of Zachariah Hayes, concluded as follows: "And the jurors aforesaid, upon their oaths aforesaid, do further present, that Peter Hawley, Calvin Hawley, and George Potter, of the county aforesaid, on the 18th day of June, in the year of our Lord 1879, with force and arms, in the county aforesaid, did willfully and knowingly aid, abet and counsel the said Marcus D. L. Hawley the felony aforesaid to do and commit; and so the jurors aforesaid, upon their oaths aforesaid, do say that the said Marcus D. L. Hawley, Peter Hawley, Calvin Hawley, and George Potter, him, the said Zachariah Hayes, in manner and form aforesaid, feloniously, willfully, and of their malice aforethought, did kill and murder, against the peace and dignity of the Commonwealth of Virginia."

Peter Hawley elected to be tried in the circuit court, and was tried separately, and the jury found him guilty of murder in the second degree, as charged in the fourth count in the indictment, and ascertained the term of his imprisonment to be thirteen years in the State penitentiary, and the court sentenced him accordingly; whereupon the prisoner obtained a writ of error to this court.

The prisoner took two bills of exception to rulings of the court. The first was to the refusal of the court to grant him a new trial on the ground that the verdict was contrary to the evidence. In this bill all the evidence, as well for the Commonwealth as the prisoner, is set out, and is sufficiently stated by Judge Anderson in his opinion. The second was to the refusal of the court to arrest the judgment, on the grounds that the indictment charging only murder in the first degree against the prisoner, it was not competent for the jury to find him guilty of any other offence, whether less or greater. Second, that the prisoner

Hawley v. Commonwealth.

had been arrested and examined on a charge of murder in the second degree, and that he had afterwards been indicted for murder in the first degree, as principal in the first degree, as principal in the second degree, and as accessory before the fact; and that the prisoner had never had the benefit of any preliminary examinations for the offence or offences whereof he was indicted. The endorsement of the justices who examined him was generally to answer an indictment to be preferred against him at the August term of the court for the county of Roanoke. The warrant of commitment was that he may be indicted before the county court of said county, for a felony by him committed, in this, that he did, on the 18th of June, 1879, in the said county, feloniously and of his malice kill and murder one Zachariah Hayes.

*J. W. Hansbrough,* for the prisoner.

*The Attorney-General,* for the Commonwealth.

ANDERSON, J. The prisoner was indicted as an accessory before the fact with the principal felon, and was convicted of murder in the second degree, as charged in the indictment—that is, as an accessory. If he had been present aiding and abetting in the murder, he would have been principal in the second degree, and could not have been convicted as accessory. But the jury found him guilty of murder in the second degree, as charged in the indictment—that is, as accessory before the fact.

It was not error to indict one as principal and the other as accessory in the same indictment. Chitty gives a precedent for it, approved by Bishop, which, after proceeding against the principal in the usual form, at the foot proceeds against the accessories before the fact as in the case at bar. 2 Bishop's Pleading, Evidence and Practice, 2 Edition, § 10.

The indictment in this case substantially adopts that form. To which is added, "And so the jurors upon their oath aforesaid, do say that said Marcus Hawley, Peter Hawley, &c., him, the said Zachariah Hayes (the deceased), in manner and form aforesaid, feloniously, willfully and of their malice aforethought, did murder and kill, against," &c. This conclusion is that the principal felon, and those who are charged as accessories before the fact, willfully, &c., did kill and murder the said Hayes. If they were accessories before the fact, they were guilty of the murder. In the case of every felony, every principal in the second degree, and every accessory before the fact, shall be punished as if he were the principal in the first degree. Virginia Cr. Digest and Procedure, p. 48, article 7. So that the conclusion is not illogical. But it is a mere conclusion of law, and if it is not warranted, the indictment is complete without it, and this clause may be stricken from it as surplusage.

It is not necessary to charge in an indictment anything more than is necessary to accurately and adequately express the offence; and when unnecessary averments or aggravations are introduced they can be considered as surplusage, and as such disregarded. Whart. Cr. Plead. and Prac., 8 Edition, § 158. Among the illustrations he gives is the following: "Conclusions of law, summing up the offence unnecessarily, may be regarded as surplusage, as where an indictment for taking a voluntary false oath, not amounting to perjury, concludes, 'And so the said A B did commit perjury,'" &c. The court is opinion, therefore, that there is no valid ground for the first assignment of error.

II. As to the second error assigned, it is sufficient to say, when the verdict is silent as to any of the counts in the indictment, it operates an acquittal on those counts.

III. As to the third error assigned, the verdict finds the prisoner guilty of murder in the second degree, " as charged in the indictment'—'that is, as an accessory before the fact.   It was the province of the jury to ascertain the grade of offence, which they find to be murder in the second degree. The verdict is responsive to the fourth count of the indictment.   And whilst the principal, if guilty of any offence, is guilty of murder in the first degree, the jury were warranted in lowering the grade of the accessory to murder in the second degree, if the evidence warranted it, of which they were the judges.

The offence of the instigator, or accessory before the fact, is not necessarily of the same grade of that of the perpetrator.   " An accessory before the fact (or, to adopt the terms of recent codes, an instigator), may be guilty of murder, while the principal or perpetrator may be guilty of manslaughter.   Or the accessory before the fact (instigator) acting in hot blood, may be guilty of manslaughter, while the perpetrator (principal), acting with deliberate malice, may be guilty of murder."   1 Whart. Cr. Law, sec. 237, bottom p. 264, 8th Edn.   Consequently the jury were authorized to find the accessory guilty of murder in the second degree, whilst the evidence may show that the principal was guilty of murder in the first degree.

As to the objection that the prisoner had no primary examination before a justice of the peace of the offence of which he is indicted and found guilty, it was not the province of the justice to fix the grade of his crime.   His inquiry was as to the fact.

The verdict is substantially the same as the petition claims it should have been.   If the prisoner was accessory to the crime charged in the indictment, he was guilty of the murder by being accessory to it.   And the finding is that the prisoner, Peter Hawley, is guilty of murder in the second degree, as charged in the fourth count of the indictment—that is, as accessory.

IV. With regard to the fourth assignment of error, the declarations of Marcus Hawley could only have been evidence upon the ground of a confederacy between him and Peter to take the life of Hayes. This depends on the evidence, which we think warrants the introduction of the declarations of either party.

The fifth assignment of error is, the refusal to set aside the verdict as contrary to the law and evidence, and to grant the prisoner a new trial.

The death of Zachariah Hayes was caused by a gun shot which he received on the 18th of June, 1879, between sunset and dark, as he was returning home from the field, called the "Mountain" or "Knob Field," in company with Green Bohen and Berry Yopp, where they had been plowing and doing other work during the day. There is a little knoll with an avenue trimmed out at nearly right angles from it to the road, where he was shot, on the right of the road, and about twenty-four steps from it. At the end of this avenue a tree was fallen, which formed a screen to a person behind it, and green twigs were bent so as not to obstruct the avenue, and there was a tolerably abrupt descent from the knoll about a step or two behind the screen. The avenue is about two feet wide. Just at the road no trees were cut, but the avenue was cut just so as to make it complete between two trees on the road. Hayes was evidently shot by some one from behind this screen, through the avenue, as he passed in front of it. The field where he had been at work was claimed by the Hawleys, and was the subject of an angry controversy between them.

William Thomason testified that in the spring before the homicide was committed, at old man Hawley's, in the yard, he heard Marcus Hawley, in the presence of Peter, talk about the difficulty between them and Hayes. Peter Hawley said, if he had been in Mark's place, he would have killed Hayes long ago. Mark said that Hayes had been

trying to outdo him about that land; that he had shot at him once, and didn't miss his head more than two or three inches, and would kill the damned rascal yet if he didn't mind how he cut his notches. Peter said, if he had been in Mark's place he would have killed him long ago; no man should run over him.

Malissa Yopp, who is an aunt of the Hawleys, testified that she was at Mr. Hawley's house some time in April before the homicide, when Mark, Peter, and Cal Hawley and George Potter came in. They said they would lay up their weapons and plant potatoes; if they needed them they would be handy; that they did not mean to be out-done in the land suit, and that if Hayes outdone them, they would kill him. Peter had a gun, and Mark a pistol. They were all talking together; could not say who said it.

Zephania Staton testifies that on the Sunday before the shooting, or the Sunday before that, at Mrs. Fannie Yopp's, Peter picked up a carbine, which was standing in a corner of the room, and said it was right heavily loaded—that it had eighteen buckshot and slugs in it. This is very prob-ably the gun with which Hayes was killed. Allen Faris saw Mark and Peter a short time before the fatal shot was fired, not more than an hour before, near the spot, and going into the pines in the direction of it—Mark having a gun which loaded at the breach, and Peter having a rifle; and the testimony is that from the gun with which the deed was done, eighteen balls or slugs were discharged. Mark Hawley was at Mrs. Yopp's on that morning, and went thence to Mrs. George Potter's. How did Peter know how heavily the gun was loaded, if it had not been loaded in concert between him and Mark? And why should he have noticed it and remarked upon it with so much interest, if he had not known the purpose for which it was loaded? The circumstance, unconnected with other facts proved, would be of little importance, but, connected with them, is entitled to weight in establishing the fact of conspiracy.

Berry Yopp testifies that two or three weeks before Hayes was shot, Edward Neighbors, Sam Yopp and Hayes were in Knob field grubbing, and that Peter Hawley started up to the field and said he was going up to run them out or die, one. There is evidence of threats made by Mark and Peter both at various other times, which it is unnecessary to detail.

The proof is, they spent the day together at Mrs. Potter's, which was 330 yards from the place where Hayes was shot, until evening, and that they left there an hour and a half before sunset, and went in the direction of the fatal spot, and that they were seen there together, both armed with guns and going into the pines in the direction of the spot. They inquired of Allen Faris, who saw them, if Hayes was in the field? who told them he was. They said if he didn't stay out of there they would kill him before the sun went down. Less than an hour afterwards he was shot, from some one behind the screen or blind before described, between sunset and dark. He was evidently shot either by Mark or Peter Hawley. And he was shot with the gun which was loaded with eighteen balls and slugs, which was not the gun that Peter had, which was a rifle.

John Sears testifies that he met Mark Hawley on the 23d of May about a mile from Hayes', and he asked him if he saw Hayes, and said he was going to get a warrant for them for working in Knob field. He said it didn't make any difference, he didn't intend that Hayes should attend the field. In April he said to him that he never would make friends with Hayes, and that when they were found together in that field, one or the other of them will have to be hauled out dead. If Hayes didn't kill him, he would kill Hayes. He said that Hayes said he was going to tend that field, and he would kill, die, and go to the devil before Hayes should tend it. Hayes says he is going to plow up my corn there, and I will kill him the first day he plows in

there, if I have to shoot him as full of holes as a sifter, or he will kill me one. Hayes had been plowing there the day he was shot.

If he was shot by Mark, and Peter was present aiding and abetting, he was equally a principal in the murder, and could not be convicted under this indictment as an accessory.

But it is proved by Mrs. Potter that Peter was with her husband in her yard, which was 330 yards off, when the gun was fired. He had left them together with Mark an hour and a half before sunset, and they were even after seen near the place by Allen Faris, evidently then meditating the perpetration of the deed which resulted in Hayes' death, by lying in wait for him. It could not have been long after this when Peter returned to Mrs. Potter's. He could only have been there a short time before the report of the gun was heard; and was sitting in the yard with George Potter, evidently watching and expecting to hear the report of Mark's gun when it was fired at Hayes, the deceased.

Upon this testimony, which is uncontradicted, the jury were warranted in finding that Peter Hawley was guilty of murder in the second degree as an accessory, as charged in the fourth count. It was the peculiar province of the jury to weigh the testimony and decide upon the facts, and the court is opinion that there is no ground for disturbing their verdict. The judgment of the court below is affirmed.

CHRISTIAN, STAPLES, and BURKS, J.'s concurred in the opinion of *Anderson, J.*

JUDGMENT AFFIRMED.