# Richmond.

## TONY HITT V. COMMONWEALTH.

November 17, 1921.

1. INTOXICATING LIQUORS—*Indictment and Information—Blanket Form of Indictment Suggested in Section 7 of the Prohibition Acts—Conviction of Drinking or Receiving Whiskey.*—Accused was indicted for violation of the State prohibition act, Acts 1918, ch. 388. The indictment was in the general blanket form suggested in section 7 of the act.

   *Held:* That as the indictment did not embrace the charge of drinking whiskey contrary to section 37 of the act, nor of receiving ardent spirits contrary to section 40 of the act, the accused could not be convicted of either of these offenses under the act.

2. INTOXICATING LIQUORS—*Receiving Ardent Spirits—Section 40 of the Prohibition Act.*—It would seem that section 40 of the prohibition act against receiving or accepting ardent spirits would not apply to the act of taking two drinks from a bottle tendered by a companion in an automobile.

3. INTOXICATING LIQUORS—*Prohibition Act—Baggage.*—A quart of liquor in one's pocket or in his automobile cannot be considered in his baggage within the meaning of the prohibition act, even though not inclosed in any other receptacle than the bottle itself.

4. INTOXICATING LIQUORS—*Transportation of Liquor—Transportation Need Not Be for Sale.*—Section 3 of the prohibition act (Acts 1918, ch. 388) prohibits every transportation of ardent liquors, whether for sale or not, subject only to the express exceptions in the prohibition act.

5. INTOXICATING LIQUORS—*Indictment and Information—Blanket Form Not Exclusive.*—The provisions of section 7 of the prohibition act, suggesting the blanket form of indictment, do not necessarily restrict the form of indictment therein prescribed to use under the specified sections 3, 3-a, 4 and 5 of the act. The act merely provides that it or any other good form of indictment shall be sufficient for any such violations. Consequently, where the general blanket form was used, it charged an unlawful transportation, and there being no demurrer or objection, was

sufficient even if the conviction depended solely upon the establishment of a violation of section 39 of the prohibition act.

6.  INTOXICATING LIQUORS—*Prohibition Act—General Verdict.*—Under the general blanket form of indictment suggested in section 7 of the prohibition act (Acts 1918, ch. 388), a general verdict of guilty is not defective for failure to point out the particular offenses of which accused was found guilty.

7.  VERDICT—*Autrefois Acquit or Convict—General Verdict.*—A general verdict of guilty upon an indictment charging several offenses will protect a defendant from a subsequent prosecution for any thereof.

8.  INTOXICATING LIQUORS—*Transportation—Accomplices and Accessories.*—Accused while riding in an automobile with two companions took two drinks from a bottle tendered him by one of his companions.

    *Held:*  That accused merely by reason of the fact that he momentarily had the bottle in his hand while he was drinking from it, did not become an actor in transporting the whiskey, and therefore was not a principal in the first degree in the offense of transporting.

9.  ACCOMPLICES AND ACCESSORIES—*Misdemeanors—Common Law.*—By the common law with respect to misdemeanors there is no distinction between principals and accessories; all participants being regarded as principals.

10.  ACCOMPLICES AND ACCESSORIES—*Definition of Accessory.*—An accessory is one not present at the commission of the offense, but who is in some way concerned therein, either before or after, as contriver, instigator, or adviser, or as a receiver or protector of the perpetrator.

11.  ACCOMPLICES AND ACCESSORIES—*Principal in Second Degree—Transportation of Liquor.*—Accused by taking two drinks from a bottle tendered him by a companion in an automobile did not become guilty of the offense of transporting the liquor as a principal in the second degree upon the principle that, being present, he aided and abetted the act.  His conduct in drinking from the bottle may have indicated an approval of what they had done and were continuing to do, but it cannot be fairly said to have constituted him a participant in the transportation either as a principal or an accessory.

12.  INTOXICATING LIQUORS—*Prohibition Act—Transporting Liquor—Instructions.*—Accused while riding in an automobile with two companions took two drinks from a bottle of whiskey tendered him by one of his companions.  The court instructed the jury that the transportation of even one quart of intoxicating liquor, or less, from Elkton to Harrisonburg, was an

unlawful act under the prohibition law, and that, if accused accompanied his companions on the trip, knowing there was liquor in the car, and drank with them from a bottle, then he was guilty under the law, whether he knew that a suit case in the car contained liquor or not.

*Held:* That the instruction left the jury no discretion, and in any event was erroneous.

Error to a judgment of the Circuit Court of Rockingham county.

*Reversed.*

The opinion states the case.

*F. C. Stipes* and *John Paul,* for the plaintiff in error.

*John R. Saunders, Attorney-General, J. D. Hank, Jr., Assistant Attorney-General,* and *Leon M. Bazile, Second Assistant Attorney-General,* for the Commonwealth.

KELLY, P., delivered the opinion of the court.

The defendant, Tony Hitt, was indicted for violation of the State prohibition act. The indictment was in the general blanket form suggested in section 7 of the act, and charged that Tony Hitt "* * * did unlawfully manufacture, sell, offer, keep, store and expose for sale, give away, transport, dispense, solicit, advertise and receive orders for ardent spirits, against the peace and dignity of the Commonwealth of Virginia."

The verdict was in the following form: "We, the jury, find the accused, Tony Hitt, guilty as charged in the indictment, and fix his punishment at a fine of $50.00 with confinement in jail for one month." The trial court sentenced the defendant acordingly, and to that sentence this writ of error was awarded.

Briefly stated, the material facts are these: Hitt lived at Elkton, in Rockingham county, about twenty miles from

Harrisonburg. One Saturday afternoon he met on the street in Elkton an acquaintance named Pittington, who invited him to go to Harrisonburg that night in an automobile. Hitt had some personal business to attend to in Harrisonburg, and said he would go. It was agreed between them that they should start from Pittington's home after supper. Pursuant to this arrangement, Hitt went to Pittington's house later, where he found Pittington and another acquaintance named Simmons ready to start in the car. On entering the car Hitt noticed a suit case on the floor in front of the rear seat. Pittington and Simmons rode on the front seat and the defendant in the rear. He did not know and did not ask what the suit case contained, and had no reason to suppose it contained whiskey, and did not know that his companions had any whiskey with them. After they had proceeded a short distance outside of the town of Elkton, Simmons, who was driving, stopped the car and he and Pittington offered Hitt a drink from a bottle which they had on the front seat. He took a drink and returned the bottle to them. Before reaching Harrisonburg he took one other drink from the same bottle. Pittington and Simmons drank a number of times on the way and were intoxicated when they arrived at Harrisonburg. Hitt was not intoxicated and at no time before their arrival did he know that there was any whiskey in the car except that which was contained in the bottle above mentioned. The radiator of the engine was hot when they reached Harrisonburg, and it was decided to take the car to a garage to get some lubricating oil. Pittington left the car, for some reason not satisfactorily explained, and Simmons and Hitt started on to a garage for the oil. As they were going around the courthouse square Simmons drove into another car. A crowd assembled and Hitt, seeing a policeman approaching and thinking that Simmons would probably be arrested on account of the accident, mingled with

the crowd without letting himself be known, and walked off down the street where he met Pittington and related the occurrence. Pittington expressed concern about the suit case, telling Hitt that it contained whiskey, and this was the first time the latter had been apprised of that fact. Simmons was arrested and taken to jail. Pittington was unwilling to claim his suit case, and later in the night hired another car in which he and Hitt returned to Elkton. On the following Monday, Pittington came to see Hitt, said that he had been advised to leave, urged Hitt to go with him, and they both left the State and went to Pennsylvania. A few days later Hitt left Pittington and went to the home of his brother in Baltimore, where he learned that warrants had been issued for Simmons, Pittington and himself. Upon advice received in a letter from his father, Hitt shortly afterwards returned and surrendered to the officers in Rockingham county.

We have omitted some of the details of the evidence, but have considered it all most carefully, and as we view the case no responsibility can be placed upon the defendant in so far as the suit case is concerned. He was in bad company, but he connot be convicted of a crime upon mere suspicion, and unless we resort to that we must treat the charge against him as if the bottle of whiskey above referred to contained the only ardent spirits in the car.

The question then is, whether the defendant could, by reason of his conduct with respect to the bottle, be lawfully convicted of any offense charged in the indictment under which he was tried.

[1, 2] He was not tried for drinking whiskey contrary to section 37 of the prohibition act. That charge is not embraced in the indictment. The conviction here complained of could not be sustained by reason of the provisions of that section, and this we understand is conceded.

It appears to be also conceded by the Attorney-General (though the trial court thought otherwise) that even if sec-

tion 40 of the act prohibiting all persons from receiving ardent spirits, except under certain specified circumstances, could be held to apply to the conduct of the defendant in taking two drinks from the bottle, he could not be convicted for that offense under the indictment here. In our opinion the section does not apply; and, further, we agree with the Attorney-General in the view that a charge of its violation is not embraced in the so-called blanket indictment.

These conclusions seem clear from the terms of the act, and are sustained by the decision of this court in *Lane* v. *Commonwealth,* 122 Va. 916, 95 S. E. 466.

The indictment does, however, charge the defendant with unlawfully transporting ardent spirits, and the real question in this case is whether under the evidence he can be held guilty of that charge.

[3] It is insisted that as to the bottle of whiskey, Pittington and Simmons themselves were not violating the law, because they had the right to carry as much as a quart for personal use in their baggage, and that a quart of whiskey in one's pocket or in his automobile may properly be considered in his baggage within the meaning of the act, even though not enclosed in any other receptacle than the bottle itself. This contention is disposed of adversely to the defendant in the case of *Snarr* v. *Commonwealth,* post, p. 814, 109 S. E. 590, decided today.

[4, 5] It is further contended that the transportation prohibited by section 3 of the act (containing substantially the language of the indictment) is a transportation for sale, and that, since the evidence shows the whiskey in the bottle not to have been transported for sale, the indictment must fall. The case of *Pine and Scott* v. *Commonwealth,* 121 Va. 812, 848, 93 S. E. 652, is relied upon to support this contention. In that case we held that the words "for sale" qualified the word "keep" as used in section 3, and that the "keeping"

there prohibited was a keeping for sale, and, further, that a transportation for sale was likewise prohibited; but we did not there decide that such was the only kind of transportation made unlawful by that section. Furthermore, it will be noted that the act of 1916 (Laws 1916, c. 146), under which the *Pine and Scott Case* was decided, has since been replaced by the act of 1918, which, in prescribing the form of indictment, uses the word "transport" in such a way as clearly indicates that it was not intended to be limited to a transportation for sale. As pointed out by Judge Burks in the *Pine and Scott Case, supra,* the word "transport" did not appear at all in the form of indictment set out in section 7 of the act of 1916. In the corresponding section of the act of 1918, however, this word not only appears in the suggested form of indictment, but is so placed as to clearly negative any intention to limit the offense charged to a transportation for sale, the language being, "did unlawfully  *  *  *  keep, store and expose for sale, give away, transport, etc." Reading section 3 in the light of this change in the original form of the indictment, we have no doubt that the former section prohibits every transportation of ardent spirits whether for sale or not, subject only to the express exceptions in the prohibition act provided; and we so hold. Furthermore, section 39 clearly prohibited the transportation of the bottle in the way in which it was being carried by Pittington and Simmons, and if the defendant was a guilty participant in the transaction, the indictment sufficiently charged the offense under the latter section. The provisions of section 7 do not necessarily restrict the form of indictment therein prescribed to use under the specified sections 3, 3a, 4 and 5 of the act, but merely provide that it or any other good form of indictment shall be sufficient for any such violations. There was no demurrer or objection to the indictment. It charged an unlawful transportation, and was sufficient even if the conviction depended solely upon the establishment of a violation of section 39.

[6, 7] It is said that the verdict ought to have been set aside because it was fatally defective in form. The contention here is that as the indictment charged a number of offenses it is impossible to say from the verdict for which one the defendant was convicted, and hence he might be subjected to a future prosecution for the very same offense for which the jury found him guilty. This position is not tenable. A general verdict of guilty upon an indictment charging several offenses will protect a defendant from a subsequent prosecution for any thereof. 22 Ency. Pl. & Pr., p. 845.

[8] This brings us to the final question in the case, namely, was the defendant under the evidence guilty of transporting whiskey? There is no room for any claim that he was guilty as a principal in the first degree. In no reasonable or just sense can it be said that within the meaning of the law he became an actor in transporting the whiskey bottle or its contents merely by reason of the fact that he momentarily had it in his hands while he was drinking from it.

[9] By the common law, with respect to misdemeanors, there is no distinction between principals and accessories, all participants being regarded as principals. (Min. Syn. Cr. Law, p. 12.) Section 3a of the prohibition act provides that on an indictment for the violation of any of its provisions "the jury may find the defendant guilty of an attempt, or of being an accessory, and the punishment shall be the same as if the defendant were solely guilty of such violation."

[10, 11] We have seen that the defendant was not a principal in the first degree because he was not an actor in the transportation. (Min. Syn. Cr. Law, p. 11.) Neither was he an accessory, because an accessory is one not present at the commission of the offense, but who is in some way concerned therein, either before or after, as contriver, instigator or adviser, or as a receiver or protector of the perpetrator; and the defendant does not fall within any of these classes.

(Min. Syn. Cr. Law, p. 12.) If guilty at all he was guilty as a principal in the second degree upon the theory that being present he aided and abetted the act. We do not think he can be said to fall within this classification. Nothing that he did before or after the discovery in any way aided or abetted their transportation of the whiskey. His conduct in drinking from the bottle may have indicated an approval of what they had done, and were continuing to do, but we do not think that it can be fairly said to have constituted him a participant in the transportation either as a principal or an accessory. Such a holding would mean that whenever one man takes a drink unlawfully which is given to him by another, he almost certainly renders himself liable to prosecution not only for that act, but for the act of the other party in unlawfully carrying whiskey with him. The act itself shows that the unlawful transportation of whiskey is regarded as a more serious offense and is more severely punished than the unlawful drinking of whiskey. We do not think it was the purpose of the act to go as far in the punishment of the offense of unlawful drinking as it would be necessary to go in this case to sustain the conviction.

[12] The trial court, over the objection of the defendant, gave the following instruction: "The court instructs the jury that the transportation of even one quart of intoxicating liquor, or less, from Elkton to Harrisonburg, is an unlawful act under the prohibition law, and that if the defendant accompanied Pittington and Simmons on the trip from Elkton to Harrisonburg, knowing there was liquor in the car, and drank with them from a bottle, then he is guilty under the law, whether he knew the suit case contained liquor or not."

This instruction left the jury no discretion, and was very probably the cause of the verdict. Whether so or not, the instruction was erroneous, and, furthermore, the verdict was without sufficient evidence to support it.

The provisions of the prohibition act, as stated by the learned and upright judge of the trial court in his written opinion, were intended to be drastic, and they must be firmly enforced in order to make the law effective. We feel, however, that an affirmance of the judgment in this case would visit a punishment upon the defendant for one violation of the act upon proof of his guilt of another violation, the latter not being charged, and, furthermore, carrying a lesser penalty than the former.

For the reasons indicated, the judgment complained of will be reversed, the verdict of the jury set aside, and the case remanded to the circuit court for such further proceedings as the Commonwealth may be advised to take therein, not inconsistent with the views herein expressed.

*Reversed.*