## Richmond

### KARREN CHANEY MCGHEE

### V.

### COMMONWEALTH OF VIRGINIA

October 10, 1980.

Record No. 791793.

Present: All the Justices.

*Benjamin R. Gardner* (*Philip G. Gardner; Gardner & Gardner,* on brief), for appellant.

*Vera S. Warthen, Assistant Attorney General* (*Marshall Coleman, Attorney General,* on brief), for appellee.

I'ANSON, C. J., delivered the opinion of the Court.

Defendant, Karren Chaney McGhee, was convicted by a jury as an accessory before the fact in the murder of her husband, Larry Dean McGhee. Her punishment was fixed at twenty years in the penitentiary, and she was sentenced accordingly. We granted this appeal, limited to considering whether the evidence is sufficient to sustain her conviction.

On October 19, 1978, Milton Edward McGhee (Dick McGhee), Larry McGhee, and Jimmy Lee Moran were shot to death at a logging site near Waidsboro, in Franklin County. Terry Brogan (here-

after often referred to as Brogan) and his brother, Ricky Brogan, were charged with and pleaded guilty to the three murders.

In oral and written statements to police officers, the defendant provided the following information: In early September 1978, Terry Brogan and the defendant began having a sexual relationship, which continued after the murder of her husband. Shortly after the commencement of the relationship, the defendant told Brogan, "[L]et's get rid of him," referring to her husband. The defendant also informed Brogan that her husband could be found working at a logging site near Ferrum, Virginia. Brogan suggested to the defendant that she kill her husband herself. Subsequently, the defendant told Brogan she had pointed a gun at her husband while he was asleep but "didn't have the nerve" to pull the trigger. On October 7, Brogan reported to the defendant that he and his brother, Ricky Brogan, had gone to the logging site near Ferrum earlier that day with the intention of shooting her husband and his coworkers, but were unable to find them. On October 8, Brogan informed the defendant that another attempt had been thwarted by the presence of another person at the logging site. The defendant could not remember seeing Brogan from October 13 through October 19. The defendant's written statement also mentioned that after October 19, she repeatedly asked Brogan about his involvement in the murders and that he continually denied any knowledge of the murders. The defendant also told one of the investigating officers that she knew the members of her family were going to hate her because they would know she had asked Brogan to kill her husband.

Terry Brogan testified that he and the defendant saw one another "a couple of times" a week after their sexual relationship commenced. On approximately half of the occasions they were together, the defendant urged him to kill her husband. She told him she wanted her husband killed so that she and Brogan "could keep on seeing each other and because she was afraid [her husband] was going to find out" about their relationship. He offered no testimony concerning his trips to the logging site above Ferrum on October 7 and 8. He did testify, however, that he and Ricky Brogan went to a logging site around 8:00 a.m. on October 19 for the purpose of hunting. Later that day, they met and talked with Larry McGhee, Dick McGhee, and Jimmy Moran, who were logging in the area. Terry Brogan then offered to assist Larry McGhee in hooking cables onto trees that had been cut. When Larry McGhee pulled a lever on machinery used in the hooking, the machinery jumped and Terry Brogan's gun accidentally fired. McGhee, with blood on his face, then ran towards Brogan. Brogan

also testified "the next thing I know, I don't know, I just shot him again." Brogan denied the defendant had "anything to do with [his] going up there." He stated he "didn't go up there to kill them. Not because she asked me to or anything like that."

Ricky Brogan testified that he and his brother went hunting in the Waidsboro area on the morning of October 19. There they met and talked with Larry McGhee, Moran, and Dick McGhee. Ricky Brogan also testified that he shot Moran shortly after his brother shot Larry McGhee. Terry Brogan then shot Dick McGhee twice on a nearby hill, returning later to shoot both Moran and Larry McGhee in their heads while both were on the ground. Ricky Brogan stated that he and his brother had never discussed anything concerning the defendant and that he was unaware of his brother's relationship with the defendant.

The autopsy reports indicated the systematic, brutal nature of the murders. The Brogans fired shotgun shells into the heads of each victim at a range of less than ten feet. Dick McGhee's autopsy revealed he suffered three shotgun wounds, two of which were inflicted at a range of less than ten feet. Moran's autopsy revealed two shotgun wounds. Larry McGhee's autopsy disclosed three shotgun wounds: on the chin, in the head, and in the chest. The latter two wounds were inflicted at a range of less than ten feet.

 We have previously defined an accessory as "one not present at the commission of the offense, but who is in some way concerned therein, either before or after, as [a] contriver, instigator or advisor, or as a receiver or protector of the perpetrator." *Tolley* v. *Commonwealth,* 216 Va. 341, 348, 218 S.E.2d 550, 555 (1975). *See also Foster* v. *Commonwealth,* 179 Va. 96, 99, 18 S.E.2d 314, 315 (1942); *Hitt* v. *Commonwealth,* 131 Va. 752, 759, 109 S.E. 597, 600 (1921). This definition mandates that in the trial of an accessory before the fact the Commonwealth establish the following elements beyond a reasonable doubt: the commission of the crime by the principal,[1] the accessory's absence at the commission of the offense,[2] and

---

[1] *Dusenbery* v. *Commonwealth,* 220 Va. 770, 771, 263 S.E.2d 392, 393 (1980); *Snyder* v. *Commonwealth,* 202 Va. 1009, 1015, 121 S.E.2d 452, 456-57 (1961); *Hatchett* v. *Commonwealth,* 75 Va. 925, 932 (1882).

[2] *Hawley* v. *Commonwealth,* 75 Va. 847, 855 (1880); *Rasnick* v. *Commonwealth,* 4 Va. (2 Va. Cas.) 356, 358-59 (1823). When the evidence establishes the accomplice was either present or keeping watch or guard at a convenient distance, the accomplice is considered a principal in the second degree. *Ward* v. *Commonwealth,* 205 Va. 564, 568, 138 S.E.2d 293, 296 (1964). The proof required to sustain a conviction of an accessory before the fact parallels that required for a principal in the second degree except for the element of presence at the commission of the crime.

that before the commission of the crime, the accessory was "in some way concerned therein . . . as [a] contriver, instigator or advisor." *Tolley,* 216 Va. at 348, 218 S.E.2d at 555.

In the present case, the Commonwealth clearly established the commission of the crime by a principal and the defendant's absence at the commission of the offense. We must therefore resolve whether the evidence sufficiently supports the jury's conclusion that before the commission of the crime the defendant was "in some way concerned therein . . . as [a] contriver, instigator or advisor." *Id.*

Two of our recent cases have dealt with the requirement at issue in this appeal. In *Turnbull v. Commonwealth,* 216 Va. 328, 218 S.E.2d 541 (1975), we determined the evidence was sufficient to sustain Turnbull's convictions of abduction and murder as an accessory before the fact. Turnbull, a gang member, had ordered one of his subordinates to "go teach Sandy a lesson." 216 Va. at 330, 218 S.E.2d at 543. Pursuant to his instructions, the subordinate and her associates abducted the victim and beat her brutally. Turnbull then directed them to drive the victim to Georgia, expressing his desire that the victim be dropped off en route and be burned so as to thwart identification of the body. Traveling towards Suffolk, rather than Georgia as instructed, 216 Va. at 331, 218 S.E.2d at 544, the subordinate and her associates killed the victim in Southampton County, Virginia. Contrary to Turnbull's instructions, they failed to burn the victim's body, leaving it instead by the side of a dirt road in a remote wooded area. Sustaining both convictions of abduction and murder, we held the evidence sufficiently established Turnbull's involvement as one who "planned and instigated the commission of the crimes." 216 Va. at 332, 218 S.E.2d at 545. Hence, Turnbull could be found guilty as an accessory before the fact. In *Tolley, supra,* which arose out of the same incident at issue in *Turnbull,* the evidence established that Tolley was present and participated in discussions concerning the abduction and murder for which Turnbull was convicted. In addition, the evidence indicated that a female under Tolley's direct control, in accordance with the gang's discipline, participated in the murder and that Tolley "encouraged the active participation in the crime of his dutiful follower." 216 Va. at 348, 218 S.E.2d at 555.

■ In the trial of an accessory before the fact, the Commonwealth must establish the accused was a "contriver, instigator *or* advisor" of the crime committed by the principal.[3] *Tolley,* 216 Va. at 348, 218

*State* v. *Grimmer,* 251 S.E.2d 780, 784 (W. Va. 1979); Perkins, *Parties to Crime,* 89 U. Pa. L. Rev. 581, 596-97 (1941).

[3] See also *Heller* v. *Commonwealth,* 137 Va. 782, 119 S.E. 69 (1923), in which

S.E.2d 555 (emphasis added). An instigator of a crime is an accessory before the fact even though he or she did not participate in the planning of the crime or even though unaware of the precise time or place of the crime's commission or of the precise method employed by the principal.[4] A contrary holding would allow instigators to escape liability for their actions by removing themselves from the planning of crimes they have incited.

The evidence must, however, establish that the accessory before the fact shared the criminal intent of the principal. *See, e.g., Rasnake v. Commonwealth,* 135 Va. 677, 707-10, 115 S.E. 543, 553-54 (1923) (applying the same requirement to principals in the second degree). To be guilty as an accessory before the fact, the accused must either know or have reason to know of the principal's criminal intention and must intend to encourage, incite, or aid the principal's commission of the crime. Perkins, *Parties to Crime,* 89 U. Pa. L. Rev. 581, 600 (1941). The amount of incitement or encouragement to commit the crime is irrelevant if the encouragement in fact induces the principal to commit the offense. *Id.* at 598.

Whether an accused knew or had reason to know of the principal's criminal intention, whether an accused encouraged the principal's commission of the crime, and whether the encouragement induced the principal's commission of the crime are questions of fact to be resolved by the fact finder unless reasonable persons could not disagree as to the resolution of these issues. A fact finder may resolve these issues by examining circumstantial evidence as well as direct evidence. *Heller v. Commonwealth,* 137 Va. 782, 787, 119 S.E. 69, 71 (1923); *Brown v. Commonwealth,* 130 Va. 733, 737, 107 S.E. 809, 811 (1921).

Several facts are undisputed in the present case. In a period of

a jury was instructed that the defendant was guilty of arson as an accessory before the fact if he "planned, counseled *or* encouraged the firing of the building." *Id.* at 788, 119 S.E. at 71 (emphasis added). Whether encouragement alone would be sufficient to render one an accessory before the fact was not questioned on appeal.

As noted earlier, the sole distinction between an accessory before the fact and a principal in the second degree is that an accessory must be absent when the crime is committed and a principal in the second degree must be present, either actually or constructively. One present at the commission of an offense may be found guilty as a principal in the second degree if he or she "was *encouraging, inciting, or* in some manner offering aid in the commission of the crime." *Jones v. Commonwealth,* 208 Va. 370, 373, 157 S.E.2d 907, 909 (1967) (emphasis added).

[4] That a principal fails to follow a procedure outlined by an accused in no way lessens the accused's culpability as an accessory before the fact. *See, e.g., Turnbull v. Commonwealth, supra.*

six weeks preceding her husband's murder, the defendant repeatedly encouraged Terry Brogan to kill her husband. During this period, she informed Brogan where her husband could be found. In the two weeks prior to the murder, Brogan and his brother went to the logging site mentioned by the defendant with the intention of shooting the defendant's husband. Brogan informed the defendant of his attempt on each occasion. Within eleven days following the second attempt, Brogan and his brother brutally murdered the defendant's husband and two others at another logging site by firing shotgun shells into all of the victims' heads. No evidence established that the defendant was involved in planning the details of the murders or that she knew the precise date upon which the murders would be committed. An instigator's liability as an accessory before the fact, however, does not depend upon proof of such facts. On the basis of the evidence submitted, a jury could reasonably conclude that the defendant instigated the commission of her husband's murder, that she had reason to know of Brogan's criminal intention and intended to encourage his commission of the crime, and that her encouragement in fact induced Brogan to commit the crime.

For the reasons stated, the judgment of the trial court is

*Affirmed.*

COMPTON, J., dissenting

I do not agree with my colleagues. In my view, the evidence utterly fails to sustain the conviction.

As the majority points out, in a trial of an accessory before the fact one of the essential elements to be established is that the accused before commission of the crime was in some way concerned therein as a contriver, instigator or advisor. Inherent in this element is the requirement that the conduct of the alleged accessory have a causal connection to commission of the target crime. *State* v. *Hunter,* 290 N.C. 556, 578, 227 S.E.2d 535, 548 (1976). Otherwise, there would be no real contriving, instigating or advising. *Id.* While not explicitly articulating the causal factor, the majority implicitly acknowledges existence of the requirement by holding that "a jury could reasonably conclude that the defendant instigated the commission of her husband's murder, that she had reason to know of Brogan's criminal intention and intended to encourage his commission of the crime, and that her encouragement in fact induced Brogan to commit the crime." In my opinion, thére is absolutely no sufficient evidence to support those conclusions.

The perpetrators of the murders, testifying as witnesses for the Commonwealth, absolved defendant of any causal connection with the murder of her husband. Ricky Brogan, who did not know of any "relationship" between defendant and his brother, Terry, testified there was no discussion with the brother before they went to the site of the murders "that had anything whatsoever to do with" defendant. Terry Brogan testified without contradiction that defendant had no connection with his going to the scene of the murders stating,

I didn't go up there to kill them. Not because she asked me to or anything like that.

In addition, the prosecutor introduced oral and written statements of defendant in which she denied any participation in the murders.

In a leading case on accomplice liability, *United States* v. *Peoni,* 100 F.2d 401 (2d Cir. 1938), Learned Hand, J., focused on the causal requirement. He wrote that to be guilty as an accessory it is necessary that a defendant "in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed." 100 F.2d at 402, quoted with approval in *Nye & Nissen* v. *United States,* 336 U.S. 613, 619 (1949). In my view, the evidence fails to show defendant associated herself with the logging camp venture during which her husband was murdered. The record fails to demonstrate defendant participated in the venture so as to attribute to her an actual desire to bring about the killing of her spouse. And the evidence does not establish defendant sought by her conduct to make the venture succeed. The record reveals a hunting excursion, which took place without defendant's knowledge, at a site where Terry Brogan unexpectedly encountered the victims, and which spontaneously erupted into a violent shooting spree. Karren McGhee's statements and actions cannot be held to have risen to the level of "contriving," "instigating" or "advising" these brutal acts because there is no evidence of a causal connection between her alleged "encouragement" and commission of the crime. At the most, the record shows defendant, during the course of an illicit relationship, made damaging statements to her paramour, many of which were uttered when, according to the proof, defendant and Brogan were just "fooling around."

Consequently, I would reverse the conviction and dismiss the indictment.