# Richmond

## JAMES TOLLEY v. COMMONWEALTH OF VIRGINIA.

October 10, 1975.

Record No. 750381.

Present, All the Justices.

*Mercer Theodore Kissinger, Jr.,* for plaintiff in error.

*Alan Katz, Assistant Attorney General (Andrew P. Miller, Attorney General,* on brief), for defendant in error.

COCHRAN, J., delivered the opinion of the court.

On June 4, 1974, James Tolley was tried by the court, sitting without a jury, on two indictments charging him with the abduction[1] and murder of Sandra Harrell Jones. At the conclusion of the Commonwealth's evidence the trial court overruled Tolley's motion to strike the evidence as to abduction but sustained the motion as to murder on the ground that the Commonwealth had failed to prove that the murder had been committed in Southampton County. At the conclusion of all the evidence the trial court found Tolley guilty of abduction as charged. Tolley has appealed the judgment order entered on January 21, 1975, sentencing him to confinement in the State penitentiary for 20 years.

The questions for our determination are whether the evidence was sufficient to prove an abduction under Code § 18.1-38, and, if so, whether the evidence was sufficient to prove that Tolley was an accessory before the fact.

The evidence, which we will consider in the light most favorable to the Commonwealth, is somewhat similar to, but by no means identical with, the evidence that we considered in *Turnbull* v. *Commonwealth*, 216 Va. 328, 218 S.E.2d 541, this day decided. The present case was tried before *Turnbull*, although on appeal *Turnbull* was argued first. In the trial court some of the same witnesses testified in both cases.

The badly beaten body of Sandra ("Sandy") Harrell Jones was found beside a farm road in Southampton County on May 25, 1973, at about 8:00 a.m. The medical examiner testified that in his opinion Sandra's death was caused by strangulation and that she died between 5:00 p.m. May 24 and 5:00 a.m. May 25.

Mrs. Judy Edwards testified that in May, 1973, Sandra came to work at the Jolly Roger, a restaurant and night club in the Ocean View section of Norfolk, where the witness was employed. Shortly before her death Sandra told Mrs. Edwards that "Mongoose", one of the Pagans, a motorcycle gang, was trying to get her money, but that she was not going to give him the money. If Mongoose came to look for her, Sandra asked Mrs. Edwards to tell him that she had left. Mrs. Edwards further testified that Sandra expressed fear of

---

[1] Tolley was indicted for abduction under Code § 18.1-38 (Repl. Vol. 1960) which provided:

"Abduction with the intent to extort money, or pecuniary benefit . . . shall be punished with death, or by confinement in the penitentiary for life or any term not less than three years."

Abduction without the intent specified in Code § 18.1-38 was subject to less severe punishment under the provisions of Code § 18.1-37 (Repl. Vol. 1960).

Mongoose two or three days before her death, and evaded him by leaving the Jolly Roger by a back door as Mongoose entered through another door.

Sergeant Sidney E. Cherry, of the Norfolk Police Department, testified that he knew Sandra and talked to her at the Jolly Roger on May 21, 1973, at approximately 2:00 a.m.; that Sandra told him that she was afraid of Mongoose and his motorcycle gang, the Pagans; that, at her request, he arranged for another police officer to drive her home; that he talked with her early the next morning; and that Sandra told him that she thought that Mongoose or his gang were going to kill her because "she would not work any more so they could get her money from her".

Officer William L. Ross, of the Norfolk Police Department, testified that on May 21, 1973, at approximately 2:00 a.m., at Sergeant Cherry's request, he drove Sandra home from the Jolly Roger; that she expressed fear that Mongoose was "putting the heat on her for her money that she was making working at the Jolly Roger, and she was trying to stay away from him"; and that she told Ross that she was going to move to another location to stay with friends.

William Gibbs and George Edwards described the circumstances under which they assisted three girls by pulling their 1967 maroon Mustang out of a mud hole in a farm road in Southampton County on May 24, 1973, between 11:00 p.m. and midnight.

Gibbs asserted that the girls "acted scared" when they came to him for help; that he and Edwards became suspicious and wrote down the license number of the Mustang; that inside the car was a black purse; and that two of the girls were barefooted, one had on shoes, and all of them were wet and muddy.

Edwards, who substantiated Gibb's testimony, identified the girls as Linda Grant, Pam Blair and June Reed. He testified that they paid him $30, which he divided with Gibbs, for pulling the car from the mud hole; and that, the following morning, accompanied by another friend, he drove back down the farm road to the mud hole where the Mustang had been stuck, and found four jackets and a blue towel in the mud hole. He then followed car tracks down the road for approximately 400 yards and found the body of Sandra Harrell Jones.

W. P. Twine, an investigator for the State Police, identified photographs that he had taken of the scene before Sandra's body had been removed. He testified that one photograph showed about three

tablespoons of blood on the ground immediately below the girl's mouth. He observed that Sandra was barefooted, that her clothes and hair were wet, that sand and mud were in her hair and between her toes, and that there were bruises on the upper part of her back.

James Thorpe, operator of a service station in Hampton, testified that on May 24, 1973, between 6:00 and 8:30 p.m. four girls in an old reddish Mustang came to his station for gasoline. Three of the girls, one of whom he identified as Pam Blair, were on the front seat, and one was lying under cover on the back seat. The driver, who remained in the car while the other two girls on the front seat went to the restroom, asked Thorpe how to get to South Carolina. He thought, although he could not be certain, that the girl on the back seat asked why they did not go on to Florida.

Dr. Charles Springate, the medical examiner, described the multiple contusions and lacerations found on Sandra's body. He acknowledged that bleeding from the laceration inside her mouth could have continued for an indeterminate length of time after her death.

The principal witness for the Commonwealth was William Wood,[2] a convicted felon. Wood had formerly been President of the Portsmouth Chapter of the Pagans, of which he said Tolley was also a member. Wood testified that John Turnbull, known as "Mongoose", was in charge of the Norfolk-Portsmouth-Virginia Beach Chapters of the Pagans and made all final decisions; that there were 35 or 40 members in the Chapters; that strict discipline was maintained; and that Tolley was a Sergeant at Arms whose duties were to maintain order and carry out the instructions of his superiors. Wood testified that girls could not become members of the gang; that the Pagans treated their girls, whom they called their "old ladies", as "property"; and that the girls "do exactly what they tell them to do", and make no decisions for themselves. Tolley's "old lady" was Pam Blair, Joseph Green's was Linda ("Crazy Linda") Grant, and Turnbull's was Sandra Jones. Tolley worked "at times" but most of the time only his "old ladies" worked.

Wood testified that in May, 1973, he was working as an unpaid informer for the State Police and for the State Arson Investigator's office. On May 24, at approximately 5:30 p.m., Turnbull, Green and Tolley came to Wood's apartment, and Turnbull advised him to have an "airtight" alibi for that night and suggested that if anyone asked Wood about Sandra, he should say that she had left town

---

[2] The record in *Turnbull* v. *Commonwealth, supra,* shows the witness to be William Woods.

that week with another girl "supposedly hitchhiking to Georgia to get a job dancing down there". Turnbull explained that they were going to "do away with Sandy and that she had caused enough problems" for them. Wood asked Tolley "what they planned on doing, and he stated to me at this time that they were going to get rid of Sandy . . . ." Wood communicated this information to Jim Smith, an undercover agent of the State Police Narcotics section, and he and Smith notified other officers and looked for Sandra until about 1:00 a.m. the next morning. Later that morning Wood saw Sandra's I.D. card in a pocketbook which Tolley burned behind the service station at Ocean View where Tolley worked. Wood asked Tolley if they had "killed Sandy over $60.00 that Mongoose supposedly thought she owed him", and Tolley replied that he had not killed her but that the " 'old ladies' had taken care of it".

Trooper James Smith, of the State Police, confirmed that Wood had reported to him the threat against Sandra on May 24, that he had enlisted the assistance of other law enforcement agents, and that he and Wood had looked for Sandra throughout the entire night and into the morning.

After the trial court overruled his motion to strike the evidence as to the abduction charge, Tolley proceeded to introduce evidence on his behalf.

Linda Grant, who had been convicted of Sandra's abduction and murder, testified that Tolley did not tell her to take the girl away or do anything with her. Linda described Turnbull as the "main man" and testified that, upon her return from the trip to Southampton County, Turnbull ordered her to give Sandra's pocketbook to Tolley to destroy. On cross-examination Linda admitted that this was the fifth different statement that she had given, that she was a drug addict and was emotionally upset during the day and night when Sandra was murdered, and that she could not remember "a lot of things". She testified that she, Pam Blair, June Reed and Turnbull took Sandra to Linda's house, but maintained that she did not know what happened to Sandra at that time, and that she did not kill her. Linda said that Turnbull had threatened her and that she had lied to save her life when she had previously admitted killing Sandra.

Linda's testimony is riddled with inconsistent and unintelligible statements. Nevertheless, the trial court could have believed that Linda was telling the truth when she said that when she saw Sandra lying in the back of the car at Ocean View she asked if the girl was

dead and was told by Turnbull, "Don't worry about nothing, Ding-bat, she ain't dead and she ain't going to die, and she will be all right. She is just out . . . ." The witness subsequently testified that when they stopped the car in Southampton County Sandra could not walk, was lying in the car "like she was dead or out", and was taken from the car and dropped by the side of the road.

The trial court also could have believed this testimony of Linda's:

"Q. Who all was present when the order was said, get her out and get her down to Georgia and get rid of her?

"A. Mongoose said that.

"Q. Was Jim Tolley there?

"A. See he took us over to the side and talked to us, and we were all there, but see like he worked at the gas station, and like Mongoose had us over to the side and Josie was beside me. See Jim was working at the gas station."

\* \* \*

"Q. *So you all had a meeting on the outside of the gas station, and Jim, Skip, Mongoose and Joe Green and you and Pam and June and everybody was outside and you were told that the girl had been beaten?*

"A. *Yes, sir.*"

\* \* \*

"Q. *After they brought her back their plans were made, and all these people were participating and they were all there at the time?*

"A. *No, they just talked together. They all agreed and everybody leaves it up to Mongoose.*

"Q. *Everybody agreed to what?*

"A. *To carry her to Georgia.*

"Q. *And do what?*

"A. *And burn her if she hadn't died.*" (Emphasis supplied.)

June Reed, who had pleaded guilty in the trial court to Sandra's murder in Southampton County and was serving a 20-year sentence in prison for that crime, testified that Tolley tried to stop Mongoose when they were leaving the service station, and that Sandra "was already dead then". On cross-examination the witness admitted that she had been reading law books in prison and that she would like to establish that the murder occurred in Norfolk rather than Southampton County in order to get a new trial. She testified that she carried Sandra by the feet when the body was removed from the car in Southampton County, and she could not account for the mud that was found between Sandra's toes. The witness admitted having made a statement to an investigating officer that Sandra must have been killed where the body was found, but said that she made the statement because Mongoose had threatened to kill her.

■ The trial court could have concluded that, based on all the credible evidence, Sandra Jones died in Southampton County, notwithstanding the earlier ruling of the court that the Commonwealth's evidence was insufficient to prove that the murder was committed there. The trial court had also ruled at the same time that the Commonwealth had made out a prima facie case of abduction. Tolley waived his right to rely on his motion to strike the evidence as to this charge at the conclusion of the Commonwealth's evidence by proceeding to introduce evidence on his behalf, and the sufficiency of the evidence is to be determined from the entire record. *Orange v. Commonwealth*, 191 Va. 423, 428, 61 S.E.2d 267, 269 (1950).

■ Tolley contends that no reasonable inference may be drawn from the evidence that Sandra Jones was taken against her will, a prerequisite to abduction. We disagree. There was ample evidence that Sandra was trying to avoid Mongoose and the Pagans because she was not willing to turn over her earnings to Mongoose; that Mongoose was searching for her; and that the girl was afraid of Mongoose and his gang. It is a reasonable inference, therefore, that Sandra did not voluntarily go with Mongoose and the three "old ladies" to the place where she was beaten. Moreover, it is a reasonable inference that the beating was administered to force Sandra to pay money to Mongoose. This evidence is sufficient to show abduction for pecuniary benefit, under the provisions of Code § 18.1-38, which continued until Sandra's death in Southampton County.

■ Tolley argues, however, that there is no evidence of his criminal agency. Again we disagree. His "old lady", Pam Blair, who was expected, under Pagan discipline, to do precisely what he ordered

her to do and nothing more or less, participated in picking up Sandra and taking her to the place where she was beaten. Tolley and Pam thereafter were present at the service station in Ocean View where Tolley worked and among those who discussed the matter and agreed that Sandra should be transported to Georgia and there burned if she had not previously died. Around 5:30 p.m. on that day, Tolley and Mongoose visited Wood and told him that they were going to get rid of Sandy, and that Wood should have an alibi for that night. The next day Tolley burned Sandra's pocketbook and, when asked if she had been killed because of the money which Mongoose had wanted to get from her, denied that he had killed her and said that the "old ladies" had "taken care of it".

The evidence, of course, does not show that Tolley was present when Sandra was first abducted or when she was murdered. The evidence is sufficient, however, to show that he was an accessory before the fact, one who, though not present, incited, advised, or abetted others in the commission of the crime. An accessory has been defined as "one not present at the commission of the offense, but who is in some way concerned therein, either before or after, as contriver, instigator or advisor, or as a receiver or protector of the perpetrator . . . ." *Foster* v. *Commonwealth*, 179 Va. 96, 99, 18 S.E.2d 314, 315 (1942); *Hitt* v. *Commonwealth*, 131 Va. 752, 759, 109 S.E. 597, 600 (1921). *See Turnbull* v. *Commonwealth, supra.*

Although the evidence points to Turnbull as the principal planner of the crimes, it is sufficient to show that Tolley aided and abetted the planner and those who carried out the plans. The evidence is sufficient to show that Tolley agreed to the continuation of the abduction from the service station in Ocean View, that he and Turnbull arranged to get rid of Sandra, and that Tolley encouraged the active participation in the crime of his dutiful follower, Pam Blair. Under the provisions of Code § 18.1-11 (Repl. Vol. 1960), an accessory before the fact "may be indicted, tried and convicted and punished in all respects as if a principal in the first degree . . . ."

When the sufficiency of the evidence is challenged, the judgment of the trial court sitting without a jury is entitled to the same weight as a jury verdict and will not be disturbed by us unless it is plainly wrong or without evidence to support it. *Evans* v. *Commonwealth*, 215 Va. 609, 613, 212 S.E.2d 268, 271 (1975).

We cannot say that the judgment order in this case is plainly wrong or without evidence to support it and it is, therefore,

*Affirmed.*