COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Huff, Athey and Fulton
Argued by videoconference


MARIA GOODMAN

                                          MEMORANDUM OPINION* BY
v.        Record No. 0509-21-2            JUDGE CLIFFORD L. ATHEY, JR.
                                          APRIL 26, 2022

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HANOVER COUNTY
Gordon F. Willis, Judge

David B. Hargett (Hargett Law, PLC, on brief), for appellant.

Matthew J. Beyrau, Assistant Attorney General (Mark R. Herring,[1]
Attorney General, on brief), for appellee.


Maria Goodman ("Goodman") was convicted by a jury in the Circuit Court of Hanover

County ("trial court") of arson of an occupied dwelling in violation of Code § 18.2-77.  On

appeal, in her single assignment of error, Goodman argues that the evidence was insufficient to

prove beyond a reasonable doubt each of the following:  (1) absence of accident, (2) criminal

agency, and (3) malice.  For the following reasons, we affirm.

I. BACKGROUND

We must view the evidence in the light most favorable to the prevailing party, the

Commonwealth.  *Stevens v. Commonwealth*, 44 Va. App. 122, 127 (2004) (citing

*Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)).  We must therefore "discard the evidence

of the accused in conflict with that of the Commonwealth, and regard as true all the credible

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Jason S. Miyares succeeded Mark R. Herring as Attorney General on January 15, 2022.

evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (*en banc*) (quoting *Watkins v. Commonwealth*, 26 Va. App. 335, 348 (1998)).  Thus viewed, the evidence presented at trial is as follows.

Around 2:00 a.m. on April 12, 2019, Hanover County Sheriff's Lieutenant David Barton ("Lieutenant Barton") went to Goodman's house in response to a report of a house fire.  When Lieutenant Barton arrived, he saw "heavy smoke coming from the residence" but no flames.  As he approached the house, Goodman was sitting on the bottom step.  She "was coughing and hacking," but told him that no one else was in the house.  Lieutenant Barton escorted Goodman across the street and helped her to the ground as the first fire truck arrived.

William Freeman ("Firefighter Freeman"), who was in charge of the fire engine, saw smoke emanating from the gables of the one-story house.  He and the other firefighters established a water supply and did a "three-sixty exterior review" of the house.  He saw no broken windows during his examination of the structure.  The house was very hot, dark, and smoky.  Firefighter Freeman and two other firefighters entered.  Because of the severity of the conditions caused by the fire, they dropped to the floor to see beneath the smoke.  There was a flame in the combined kitchen and living room area, which was quickly extinguished.  Firefighter Freeman initially believed the flame in the kitchen area was the only origin of the fire, but soon realized there was another fire in the house.

Firefighter Freeman located the attic hatch and partially entered the attic.  He did not see flames at first, but when another firefighter opened the back bedroom door, flames erupted at the ceiling level toward the attic.  There was also an active fire in the back bedroom.  More firefighters arrived, and as they extinguished the bedroom fire, conditions in the house improved.  Later,

evidence of a third fire in another bedroom was found as well. In addition, all the bedroom doors were closed.

Hanover County Fire Marshal Steven Phillips ("Fire Marshal Phillips") investigated the incident and determined that there were four separate origins of fire inside the house. Testifying as an expert in fire investigations and the origins and causes of fires, Fire Marshal Phillips opined that there were two points of origin in the back bedroom: the first was a box of clothing, papers, and other combustibles beneath a window, and the second was a dresser which showed significant fire damage. In the front bedroom, Fire Marshal Phillips found burnt paper, plastic, and clothing on the carpet and determined they were the source of the fire in that room. Finally, the fourth point of origin was in the kitchen next to the pantry.

While inspecting the residence, Fire Marshal Phillips saw that insulation in the kitchen pulled down from the ceiling by the firefighters was clean, indicating that there had been "no direct flame impingement into the ceiling area between the Sheetrock and the attic." Similarly, he found no evidence of flame impingement in the ceiling in the back bedroom. Based on the limited smoke damage to the door jams, he determined that the bedroom doors were closed during the fire.

Fire Marshal Phillips found a "BIC stick lighter" on the vanity in a bathroom in the center of the house and, considering the nature of the damage to the vanity, he determined that the lighter had been on the counter during the fire. Moreover, Fire Marshal Phillips concluded that all four fires were caused by an ignition source that "made direct contact with ordinary combustible materials," and were not caused by an electrical source. He ruled out the oven as a possible source of the fire because Goodman informed him that she had not used the oven or stove. Fire Marshal Phillips testified that the multiple points of origin found in the home could not have been caused by flying embers because the distance between the points of origin was too far, the bedroom doors were shut when the firefighters arrived, and the ceiling sheetrock and insulation had not been damaged. He

opined that the fires were started when an ignition source—such as a lighter—"came in direct contact with those ordinary combustible materials that were ignited at those points of origin."

Hanover County Sheriff's Investigator Jordan ("Investigator Jordan") interviewed Goodman after the fire. Goodman denied that she started the fire. At trial, she testified that her dog woke her up during the night, while she was sleeping on the couch in the living room, and she saw flames in the kitchen. She said she crawled through the smoke to the front door to escape and called for emergency help.

Dr. Craig Beyler ("Dr. Beyler"), an engineer who mostly worked with "fire issues," testified for the defense. He opined that an accidental fire which started in the attic could not be eliminated as a causal factor of the three points of origin found in other areas of the house. On cross-examination, Dr. Beyler acknowledged that he had not interviewed the firefighters who had been at the scene and conceded that if the bedroom doors were closed during the fire, his hypothesis that burning embers from the attic could have started the fires in the bedrooms would be faulty.

Robert Henderson ("Henderson"), also qualified as an expert, testified that Dr. Beyler's theory that the fire could have started in the attic and dropped down to the kitchen was not feasible because there was no fire damage in the attic above the kitchen. Henderson explained that all the fire patterns in the house were below the ceiling and used photographs of the house to walk the jury through his investigation. He agreed with Fire Marshal Phillips that all the points of origin were caused by direct flames being introduced to ordinary combustible materials. He also testified at length about the possible ignition sources he ruled out, including the outside electrical panel, the appliances in the kitchen, electrical items and outlets in the bedrooms, and the like. Henderson ultimately concluded that there were four different points of origin: a fire began near the kitchen door by open flame exposed to combustibles, a fire began in the master bedroom by open flame exposed to combustibles under the window, another fire charred the dresser in the master bedroom,

and a fourth fire began in the other bedroom by open flame exposed to ordinary combustibles. He specifically found no basis for believing there was any fire in the attic.

The trial court denied Goodman's motion to strike the evidence, and the jury convicted her of arson. The trial court imposed the jury's recommended sentence of five years' incarceration and suspended four years. This appeal followed.

II. ANALYSIS

"If any person maliciously (i) burns, . . . in whole or in part, or causes to be burned or destroyed . . . any dwelling house or manufactured home whether belonging to himself or another . . . he shall be guilty of a felony . . . ." Code § 18.2-77. To convict Goodman of arson of an occupied dwelling under Code § 18.2-77, the jury had to find beyond a reasonable doubt that the evidence (1) overcame the presumption that the fire was accidental, (2) showed that at least one of the fires was deliberately set, (3) showed that Goodman was the one who set at least one fire, and (4) showed that Goodman set at least that one fire with malice. Goodman does not dispute that there was a fire in the house or that the house was occupied when the fire began. Instead, she argues there was insufficient evidence to show she set one or more fires deliberately. We disagree and therefore affirm.

The trier of fact is required "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Brown v. Commonwealth*, 68 Va. App. 44, 55 (2017) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). A judgment can be overturned for insufficient evidence only if it was "plainly wrong or without evidence to support it." *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). There was sufficient evidence if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Dietz v. Commonwealth*, 294 Va. 123, 132 (2017) (quoting *Bowman v. Commonwealth*, 290 Va. 492, 496-97 (2015)). This means that, although

- 5 -

"we interpret [the law] *de novo*," we defer to the trial court's findings of fact. *Hutton v. Commonwealth*, 66 Va. App. 714, 719 (2016) (citations omitted). Just because another trier of fact "might have reached a different conclusion" about what the evidence showed does not mean that this "[C]ourt [can] say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt." *Commonwealth v. Perkins*, 295 Va. 323, 327 (2018) (first alteration in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)).

Each element of arson can be proved by circumstantial evidence. *Cook v. Commonwealth*, 226 Va. 427, 433 (1983). "[W]here the Commonwealth's evidence as to an element of an offense is wholly circumstantial, 'all necessary circumstances proved must be consistent with guilt and inconsistent with innocence and exclude every reasonable hypothesis of innocence.'" *Moran v. Commonwealth*, 4 Va. App. 310, 314 (1987) (quoting *Inge v. Commonwealth*, 217 Va. 360, 366 (1976)). Nonetheless, even if "'some evidence . . . support[s]' the appellant's hypothesis of innocence," we must affirm if any "'reasonable [fact finder], upon consideration of all the evidence, could have rejected [the appellant's] theories in his defense and found him guilty of [the charged crime] beyond a reasonable doubt.'" *Emerson v. Commonwealth*, 43 Va. App. 263, 277 (2004) (third and fourth alterations in original) (quoting *Hudson*, 265 Va. at 513). A reasonable fact finder may reject theories advanced by the defendant—even if they are supported by some evidence—so long as it could reasonably infer from all the other evidence a theory of the case consistent with guilt and inconsistent with innocence. *Commonwealth v. Moseley*, 293 Va. 455, 464-65 (2017) (citations omitted).

First, the evidence was sufficient for the jury to conclude that the Commonwealth overcame the presumption of accident and proved the *corpus delicti* of arson. "The *corpus delicti* of arson must consist of proof that the fire was of incendiary, rather than of accidental origin." *Riner v. Commonwealth*, 268 Va. 296, 328 (2004) (internal quotation marks omitted)

- 6 -

(quoting *Cook*, 226 Va. at 431). A criminal defendant in an arson case "has the benefit of a presumption that the fire was caused by accident." *Id.* (citing *Cook*, 226 Va. at 431). Expert testimony based on interviews with witnesses and on personal observations can eliminate accidental causes, thus overcoming the presumption of accident and proving that the fire was incendiary—that is, that it was deliberately set. *Id.* at 329-30. If multiple experts present conflicting evidence, "it is within the province of the finder of fact, in this case the jury, to assess the credibility of the witnesses and the probative value to be given their testimony." *Id.* (internal quotation marks omitted) (quoting *Mercer v. Commonwealth*, 259 Va. 235, 242 (2000)). "When a fact-finder has accepted the testimony of a qualified expert witness, which negates every reasonable possibility that a fire was of accidental origin, we cannot hold the evidence insufficient, as a matter of law, to support a finding that the fire was of incendiary origin." *Cook*, 226 Va. at 432.

Here, Dr. Beyler testified that the investigation did not properly eliminate all potential sources of accidental ignition. However, Henderson testified extensively to the sources he considered and ruled out as potential sources of accidental ignition, specifically dealing with every potential source Dr. Beyler mentioned. The only potential accidental ignition source Henderson did not examine was an electrical air-conditioning device in the attic, but Henderson ruled that out as a potential source of accidental ignition by pointing out the lack of damage to the attic and insulation, much of which was visible in pictures he showed the jury. He opined that if the fire had started in the attic, there would have been extensive damage that would have been easily visible in the photographs. Additionally, Dr. Beyler conceded that if the bedroom doors were closed during the fire, his hypothesis that burning embers from the attic could have started the fires in the bedrooms would be incorrect. Henderson said the only viable explanation was that open flames came into contact with combustible materials in various parts of the house.

Contact between open flames and ordinary combustibles could only have happened if someone deliberately applied open flames to those parts of the house, especially since Goodman affirmed that she did not light any candles for at least several days. This evidence justified the jury in concluding that the evidence indicated that someone set the fire intentionally.

Second, the evidence was sufficient for the jury to conclude that Goodman was the one who set the fire. Goodman told Lieutenant Barton that she was the only one in the house. Her son testified that he had last visited the house a week before. No evidence suggested anyone came into the house to set the fires. In fact, Goodman testified that her dog would have barked furiously if anyone had broken in, but he did not bark until the flames broke out in the kitchen. Also, Goodman had a lighter in one of her bathrooms with which she could have set the fires. This evidence justified the jury in concluding that the evidence showed Goodman was the person who set the fires. *See Cook*, 226 Va. at 432 (permitting the jury to reject the idea that other persons who knew that the key was kept under the door had used the key to sneak into the house to set the fire).

Third, the evidence was sufficient for the jury to conclude that Goodman set the fire with malice. The malice required under Code § 18.2-77 is the same as the common law definition of criminal malice. *Bell v. Commonwealth*, 11 Va. App. 530, 532-33 (1991). "Malice inheres in the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will." *Long v. Commonwealth*, 8 Va. App. 194, 198 (1989) (quoting *Dawkins v. Commonwealth*, 186 Va. 55, 61 (1947)). Malice "includes not only anger, hatred and revenge, but every unlawful and [unjustified] motive." *Watson-Scott v. Commonwealth*, 298 Va. 251, 256 (2019) (*quoting Martin v. Commonwealth*, 184 Va. 1009, 1015 (1946)). Malice "may be directly evidenced by words, or inferred from acts and conduct which [necessarily] result in injury." *Long*, 8 Va. App. at 198 (quoting *Dawkins*, 186 Va. at 61).

Here, the jury could infer from Goodman deliberately setting the fire that she did "a wrongful act intentionally." Although Goodman argues that she lacked any motive to burn her own house, the evidence showed she lit the fire intentionally. Goodman does not argue that she was not mentally capable of forming the intent to deliberately set a fire or that she could have set the fire in her sleep. Therefore, the only reasonable explanation was that Goodman, knowing what she was doing, deliberately set four separate fires. Because Goodman denies she set the fires, she of course offers no justification for setting her house on fire. Although it is unclear why Goodman set fire to her home, we cannot disturb the jury's conclusion that she intended to do so. The evidence justified the jury in finding that the Commonwealth met its burden to prove that Goodman acted with malice.

### III. CONCLUSION

The jury could credit the Commonwealth's experts over the defense expert, especially given the detailed nature of Henderson's testimony in rebuttal to Dr. Beyler's testimony. It therefore had sufficient evidence to conclude that the fires were incendiary rather than accidental. Because they were incendiary, they must have been set intentionally and the evidence was sufficient to conclude that Goodman set them. In the absence of evidence of mental incapacity or the like, the jury could conclude that Goodman intended to set the fires and thus had the requisite malice. Accordingly, we affirm.

*Affirmed.*